# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>PANG MUA,<br><br>           Defendant. | CASE NO. 1:12-CR-00132-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER U.S.S.G. AMENDMENT 782<br><br>(Doc. 56) |

Defendant Pang Mua, through counsel, has moved this Court to reduce his sentence, under section 1B1.10(b)(1) of the United States Sentencing Guidelines ("U.S.S.G") and Amendment 782 ("the Amendment") to the U.S.S.G.,[1] which revised the Drug Quantity Table in § 2D1.1 and reduced by two levels the offense level applicable to many drug trafficking offenses. Doc. 56. The Government, which concedes that Defendant is eligible for a sentence reduction, nevertheless opposes the motion on the basis that Defendant does not merit a favorable exercise of the Court's discretion and "in light of the Government's concessions in the original plea agreement." Doc. 60. Defendant has filed a reply to the Government's opposition. Doc. 61. Upon a thorough review of

---

[1] Hereinafter, all references to sections (§) refer to the United States Sentencing Commission, *Guidelines Manual* ("the Guidelines") unless otherwise indicated.

the parties' briefing, the record in the case including the Probation Office's Presentence Report ("PSR") (Doc. 44), and the relevant law, the Court will DENY Defendant's motion.

## I.  BACKGROUND

On November 8, 2013, Defendant pleaded guilty to both counts of a two-count Indictment: (1) Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); and (2) Possession With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1). PSR ¶ 1; Doc. 38.

Defendant's PSR recommended a total offense level of 28. PSR ¶ 23. The applicable Guideline for counts 1 and 2 is § 2D1.1, which predicates the base offense level upon the amount of narcotics involved in the case. Under the version of § 2D1.1 applicable at the time the PSR was prepared, if an offense involved at least 20 grams, but less than 35 grams of methamphetamine, the applicable offense base offense level was 28. *See* U.S.S.G. § 2D1.1(c)(6) (2012). Thus, because approximately 26.5 grams of actual methamphetamine were seized in connection with Defendant's offense (PSR ¶ 76), the PSR determined his base offense level to be 28. *Id.* ¶ 14. Because a firearm was possessed as part of the offense, a 2-level increase was applied pursuant to U.S.S.G. § 2D1.1(b)(1). *Id.* ¶ 15. Under U.S.S.G. §§ 3E1.1(a) and (b), Defendant's acceptance of responsibility warranted a three-level reduction, for an adjusted total offense level of 27. *Id.* ¶¶ 41-42. At a total offense level of 27, with a criminal history category of III, the Guidelines range was 87-108 months of imprisonment. *Id.* ¶56. In formulating a recommendation, the probation officer considered the totality of the factors listed in 18 U.S.C. § 3553(a), highlighting both the aggravating factors—the serious nature of the underlying offense, Defendant's criminal history, the need to protect the public, and also the mitigating factors—Defendant's commitment to rehabilitation, formal work experience, employment history, and family ties. *Id.* ¶¶ 81-83, 85. Therefore, the PSR recommended a sentence of 100 months of imprisonment. *Id.* at 17.

On February 18, 2014, Defendant, through counsel, submitted a Sentencing Memorandum, requesting a downward variance to an offense level of 23 and a sentence of 57 months of imprisonment. Doc. 47. First, Defendant pointed out that the Sentencing Commission had acknowledged the sentencing ranges in U.S.S.G. § 2D1.1 to be higher than necessary and had proposed an amendment that would reduce the offense levels by two, effective November 1, 2014.

*Id.* Defendant argued that there was a "strong possibility" that his offense level would be reduced, and urged the Court to impose the prospective offense level that would take effect later in the year. *Id.* Defendant also highlighted his cooperation with law enforcement, consistent work history, and personal history, stating that he "realize[d] that he has been wasting his life" and that he was "committed to leading a sober life and being a positive, loving presence for his children." *Id.*, at 2-4.

On February 20, 2014, the Government submitted a Sentencing Memorandum, requesting that the Court sentence Defendant to a 70-month term of imprisonment. Doc. 48. The Government stated that its prior agreement to recommend a two-level reduction in Defendant's offense level had already given Defendant "every benefit of any doubt" with regard to the amount of actual methamphetamine attributable to him for distribution, as opposed to the quantity for his personal use. *Id.*, at 1-2. With this agreed-upon two-level reduction, the amount of actual methamphetamine attributable to Defendant effectively fell to between 5 and 20 grams, *see* U.S.S.G. § 2D1.1(c)(7) (2013), and the Guidelines range was 70-87 months, instead of the 87-108 months listed in the PSR. Doc. 48, at 2. Furthermore, the Government opposed Defendant's request for a further downward variance on the basis that it had agreed not to pursue additional charges against him in relation to the instant offense and because Defendant's criminal history did not warrant a sentence below the Guidelines range. *Id.*, at 2-3.

On February 24, 2014, this Court held Defendant's sentencing hearing. Docs. 50, 55. Based upon the Sentencing Memoranda submitted by the Government and Defendant, the Court found that the applicable offense level was 25, and with a criminal history category of III, the Guidelines range was 70-87 months. Doc. 55, at 3:24-25; 4:1-5. The Court then sentenced Defendant to 70 months of imprisonment, at the bottom end of the Guidelines range. *Id.* at 4:3-5; 11:18-22.

## II.     LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, ___U.S.____, 131 S.Ct. 2685, 2690 (2011) (internal citation and quotation marks omitted). One "narrow exception" to this rule of finality is listed in 18 U.S.C. § 3582(c)(2), which permits a court to modify the imposed sentence if the defendant was sentenced to a term of imprisonment

3

based on as sentencing range that was subsequently lowered by the Sentencing Commission, "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(2); *see Dillon v. United States*, 560 U.S., 817, 827-28 (2010); *United States v. Dunn,* 728 F.3d 1151, 1155 (9th Cir. 2013).

Effective November 1, 2014, the Commission promulgated Amendment 782, which generally revised the Drug Quantity Table and chemical quantity tables across drug and chemical types. *See* U.S.S.G. § 2D1.1 (2014). The Commission also voted to make the Amendment retroactively applicable to previously sentenced defendants. *United States v. Navarro*, 800 F.3d 1104, 1107 (9th Cir. 2015). Nevertheless, "the only 'appropriate use' of sentence modification proceedings under section 3582(c) is to adjust a sentence in light of a Guidelines amendment," so courts may not use such proceedings "as a 'full resentencing' that reconsiders a sentence based on factors unrelated to a retroactive Guidelines amendment." *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011) (internal citations omitted).

Determining whether a sentence reduction is appropriate under § 3582(c)(2) "requires a two-step inquiry." *Dunn*, 728 F.3d at 1155 (citing. *Dillon*, 560 U.S. at 826-67). At step one, "a district court must determine whether a prisoner is eligible for a sentence modification under the Commission's policy statement in U.S.S.G. § 1B1.10." *Id.* That policy statement enumerates a list of amendments to the Guidelines which have lowered the sentencing ranges for certain offenses. *See* U.S.S.G. § 1B1.10(d). In the event that one of the enumerated amendments has lowered a guideline range applicable to a defendant, the district court "shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) … had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1).

If the answer to step one is that the defendant is eligible for a reduced sentence, the district court turns to step two of the inquiry, where the court "must consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dunn*, 728 F.3d at 1155 (internal quotation marks and citation omitted); *see also Freeman*, 131 S.Ct.

at 2694 ("[T]he statute permits but does not require the court to reduce a sentence."). The § 3553(a) factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>         […]
> (5) any pertinent policy statement [issued by the Sentencing Commission] […];
> (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants;
> (7) and the need to provide restitution to victims."

18 U.S.C. §3553(a). Moreover, "[w]hen a party raises a specific, nonfrivolous argument tethered to a relevant 3553(a) factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *United States v. Carty*, 520 F.3d 984, 992-93 (9th Cir. 2008) (*citing Rita v. United States*, 551 U.S. 338, 357 (2007)); *see also United States v. Trujillo*, 713 F.3d 1003, 1009 (9th Cir. 2013) ("The district court's duty to consider the § 3553(a) factors necessarily entails a duty to provide a sufficient explanation of the sentencing decision to permit meaningful appellate review.").

**III.   DISCUSSION**

As a preliminary matter, the Court acknowledges that since the effective date of Amendment 782, the Government and the Office of the Federal Defender have stipulated to reduced sentences for a considerable number of eligible prisoners in this District. Their collaboration on these cases yields numerous benefits, including the efficient effectuation of the Sentencing Commission's purpose[2] in

---

[2] According to the Sentencing Commission, the purpose behind Amendment 782 reflects the Commission's "determination that setting the base offense levels above mandatory minimum penalties is no longer necessary and that a reduction would be an appropriate step toward alleviating the overcapacity of federal prisons." U.S.S.G. Amendment 782 (policy statement) (citing 28 U.S.C. § 994(g), which requires the Commission to formulate guideline to "minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons.").

5

1  passing Amendment 782, lightening the Court's caseload, and providing earlier notice to eligible
2  defendants as to their new sentences. Therefore, the Government's submission of an opposition
3  against an eligible defendant is notable.
4  	Here, all parties agree that Amendment 782 has reduced Defendant's applicable Guidelines
5  range from 70-87 months to 57-71 months. Doc. 56, at 6; Doc. 60, at 5. At issue is whether the Court
6  should grant Defendant's request, and exercise its discretion by reducing Defendant's sentence from
7  70 months to 57 months. *See id.*
8  	The Government's first argument against such a reduction is that Defendant has already
9  received "significant benefits" during the plea negotiations that occurred in relation to his underlying
10 sentence—specifically (1) the Government's agreement to a two-level reduction in deference to
11 Defendant's allegations that a certain amount of the methamphetamine seized from him was for
12 personal use, as opposed to being intended for distribution; and (2) that the Government had opted to
13 forego charging the firearm as having been carried in relation to a drug trafficking offense. *Id.*, at 8.
14 The Government believes that this "considerable break" is sufficient basis for declining Defendant's
15 § 3582(c)(2) request. *Id.* Defendant counters that at the time of his plea, the Government's decision
16 not to add an additional charge with regard to the firearm must have been "based on the sound
17 exercise of prosecutorial discretion." Doc. 61, at 4. Defendant argues that he was sentenced
18 "pursuant to the plea agreement to the low-end range found applicable by this Court, based on the
19 drug quantity table in effect at the time," and that he should not be denied a sentence reduction under
20 Amendment 782 simply on account of his initial plea negotiation. *Id.*
21 	In this regard, the Court agrees with Defendant, as the Court is not persuaded that the
22 benefits of the underlying plea negotiations have any bearing on whether Defendant now merits a
23 reduction pursuant to Amendment 782. One of the Sentencing Commission's Policy Statements,
24 found at U.S.S.G. § 1B1.10(a)(3), clarifies that the "appropriate use" of § 3582(c)(2) proceedings is
25 confined to determining whether to modify a sentence in light of a Guidelines amendment, and that
26 factors unrelated to the Guidelines amendments are therefore inapposite. *Fox*, 631 F.3d at 1132; *see*
27 *also Dillon*, 560 U.S. at 828 (noting that § 3582(c)(2) has a "limited scope and purpose"). The one
28 case that the Government cites as authority for its position, *United States v. Barragan*, 333 Fed.

Appx. 319 (9th Cir. 2009), does not provide an adequate foundation for the Government's argument that the benefits of a plea agreement are <u>alone</u> enough of a reason to deny a § 3582(c)(2) motion. Although *Barragan* upheld the district court's denial of the defendant's § 3582(c)(2) motion and found that the district court "properly took" into account the defendant's plea agreement and the seriousness of his drug offense, these facts were considered in the context of applying the § 3553(a) factors to the defendant's motion. *See* 333 Fed. Appx. 319. Because the Court finds that any benefits that Defendant may have been afforded by his plea negotiations are outside the scope of Amendment 782's effect on Defendant's Guidelines range, they are likewise beyond the scope of his § 3582(c)(2) proceedings. *See Dillon*, 560 U.S. at 831.

Next, the Court turns to the application of the § 3553(a) factors, the outcome of which the parties dispute. The Government asks the Court to accord significant weight to Defendant's criminal history "because it implicates a number of pertinent factors under section 3553(a), including his history and characteristics and the need to afford adequate deterrence, protect the public from further crimes, and promote respect for the law." Doc. 60, at 9-10. The Government highlights that Defendant's criminal history began in 1994, points out that two of his several offenses involved Defendant possessing a firearm, and argues that Defendant has exhibited dangerous behavior that poses major risks to public safety, including a speed contest wherein Defendant drove 60-70 miles per hour in a 40-45 mile per hour zone for "pride." *Id.*, at 9. This information is confirmed in Defendant's PSR, which shows that he has the following convictions: at 15, assault with a deadly weapon (as a juvenile); at 20, receipt of stolen property; at 23, misdemeanor speed contest; at 26, possession of methamphetamine, and at 26, distribution and possession of methamphetamine with intent to distribute. PSR ¶¶ 25-29. In response, Defendant argues that the Government has failed to present new facts or evidence that he poses a greater risk to public safety than he did at the time of his original sentencing.[3] Doc. 61, at 5.

---

[3] Defendant also cites the Sentencing Commission's study after it passed a retroactive amendment reducing sentences for crack cocaine offenses, which found no evidence of greater recidivism among offenders who had reduced sentences in comparison to crack cocaine offenders who had served the entirety of their original sentences. Doc. 61, at 5. The Court finds this study to be of limited applicability in this case, which concerns a defendant with a demonstrated addiction to methamphetamine, not crack cocaine.

With regard to Defendant's criminal history and characteristics, the Court is mindful that Defendant is now approximately 37 years of age, a significant amount of time has elapsed since his earlier offenses, and these offenses are already accounted for in Defendant's amended Guidelines range. The Court therefore does not place much emphasis on these earlier offenses, including the speed racing contest noted by the Government. What does concern the Court, however, is the fact that Defendant's two most recent offenses, including the one he is currently imprisoned for, involved his possession of firearms in conjunction with possession with intent to distribute methamphetamine.[4] At Defendant's sentencing hearing in this case, the Court cited his possession of a firearm as the reason for denying his request for a downward variance from the then-applicable Guidelines range, because of the grave public safety implications. *See* Doc. 55, at 10-11. Defendant's argument that the Government has failed to present new evidence does little to assuage the Court's misgivings because it does not squarely address the Court's concern about Defendant's two instances of possessing firearms alongside methamphetamine, and because the severity of Defendant's offense has not changed. The Court therefore finds that the nature and circumstances of the offense and Defendant's history and weigh against granting him a sentence reduction. *See Dunn*, 728 F.3d at 1149.

The presence of the firearm also relates to the need for the sentence to reflect the seriousness of the underlying offense and to provide just punishment for the offense, which the Court must also duly consider in these proceedings. *See* 18 U.S.C. § 3553(a). The Government argues that this factor weighs against granting Defendant a sentence reduction. Doc. 60, at 11. Defendant does not exactly address this factor, but in urging the Court to apply the lowest end of his amended Guidelines range, as it had done at his original sentencing, implies that a sentence of 57 months adequately reflects the severity of his offense and amounts to just punishment. Doc. 61, at 5-6. However, if the amended Guidelines range of 57 to 71 months had been in place at the time of Defendant's original sentencing, the Court would still have imposed a 70-month sentence, which is within the amended Guidelines range. At Defendant's original sentencing, his attorney requested a 57-month sentence on

---

[4] For this reason, Defendant's case is distinguishable from *United States v. Denwitty*, No. 1:11-CR-0393 LJO, 2015 WL 2452790 (E.D. Cal. May 21, 2015), where this Court granted a § 3582(c)(2) motion despite the Government's opposition.

8

the basis that Amendment 782 would take effect later that year. Doc. 55, at 10. The Court rejected the argument then, largely because Defendant possessed a firearm in relation to the underlying offense, and determined that a sentence of 70 months accounted for the severity of Defendant's offense and constituted just punishment for this offense. *Id.*, at 11. The passage of Amendment 782 has not changed this determination, and the Court therefore finds that this factor likewise does not support granting Defendant a sentence reduction at this time. *See Dillon*, 560 U.S. at 827; *accord United States v. Clayton*, ___ F.3d___, 2016 WL 360606, *2 (7th Cir. Jan. 28, 2016) (affirming the denial of a § 3582(c)(2) motion that was "based upon the severity of the offense, the Court's original below-guideline sentence and its rationale in imposing such sentence, and despite Clayton's current eligibility for reduction").

In his Reply, Defendant argues that in addition to what the Government has raised, the Court should consider his post-conviction conduct, which weighs in favor of granting a reduction in his sentence. Doc. 61, at 6. Defendant states that he had previously demonstrated the ability to maintain steady employment, and that he "has the ability to do well: to work hard, remain sober and stable, and to care for his family." *Id.*, at 7. Both the Supreme Court and the Ninth Circuit have "made clear that post-sentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, ___ U.S. ___, 131 S.Ct. 1129, 1242-43 (2011) and *Gall v. United States*, 552 U.S. 38, 59 (2007)). Defendant notes that since he has been in prison, he has completed a welding course, a 20-hour parenting course, and is currently enrolled in the 500-hour Residential Drug Abuse Program ("RDAP"). Doc. 61, at 6. Defendant also points out that "during the initial 14 months of supervision, his performance on supervised release was exceptional." *Id.* Nevertheless, as described by his attorney during sentencing, Defendant "then relapsed and everything fell apart." Doc. 55, at 10. This relapse resulted in the underlying offense in the instant case, for which Defendant is now imprisoned. Although the Court commends Defendant for his post-sentencing activities, which manifest efforts to improve himself and work towards sobriety and rehabilitation, the Court is not convinced that these activities are sufficient to outweigh his history and characteristics—especially

his most recent relapse into methamphetamine abuse, and the need for his sentence to reflect the severity of his offense. The record, as it stands, does indicate that Defendant is moving in a positive direction, and the Court very much hopes that he will continue along this path. However, at this time, the Court declines to exercise its discretion to grant Defendant a reduction in his sentence pursuant to § 3582(c)(2), because under the totality of the circumstances, the relevant § 3553(a) factors do not tip the balance in his favor.[5] *See Dillon*, 560 U.S. at 827; *see also United States v. Lightfoot*, 626 F.3d 1092, 1096 (9th Cir. 2010) ("[T]he district court had every reason to be concerned that Lightfoot's prior behavior would become renascent upon his release from prison, and the court did not abuse its discretion when it refused to expedite imposition of Lightfoot upon society by reducing his earlier sentence.").

**IV.   CONCLUSION AND ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Pang Mua's motion to reduce his sentence (Doc. 56) is **DENIED**, pursuant to 18 U.S.C. § 3582(c)(2). The Clerk of Court is **DIRECTED** to **TERMINATE** the Defendant and **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:   **March 2, 2016**         /s/ Lawrence J. O'Neill
                              UNITED STATES DISTRICT JUDGE

---

[5] In denying the instant Motion, the Court in no way forecloses the possibility that Defendant may be able prevail on a second § 3582(c)(2) motion if his post-conviction activities become sufficient to outweigh the negative factors in his case, especially if he completes the RDAP program and demonstrates a firm commitment to conquering his methamphetamine addiction and a disavowal of firearms. *Trujillo*, 713 F.3d at 1107 (district courts have jurisdiction to entertain successive § 3582(c)(2) motions). As Defendant was sentenced to a 70-month term of imprisonment on February 24, 2014, there is adequate time for him to make such a showing in the future. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure.").